# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE ANN ALI, | Case No. 1:22-cv-00960-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

## I.     INTRODUCTION

Plaintiff Laurie Ann Ali ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Acting Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.     BACKGROUND

Plaintiff was born on March 25, 1973, has at least a high school education, and previously worked as a receptionist. (Administrative Record ("AR") 34–37, 48, 55, 62, 183, 217–18.) Plaintiff protectively filed an application for SSI payments on April 28, 2020, alleging she became disabled

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10.)

on July 18, 2013,[2] due lower back issues, "low eye with glasses," and "overall health worsened." (AR 15, 55, 63–64, 78, 90, 183–92.) Plaintiff was 47 years old on the date the application was filed. (AR 55.)

**A.    Relevant Evidence of Record[3]**

   **1.    Medical Evidence**

In 1999, Plaintiff slipped and fell on some oil on the ground and suffered an injury to her lower back. (AR 321.) She went to physical therapy and began to see a chiropractor, who told her that she had a torn spinal muscle, tilt of tailbone, and neck "turnaround." (AR 321.) After receiving treatment for a few years, she experienced some improvement and was able to return to work, but continued having lower back pain. (AR 321, 382.)

Plaintiff attended a visit with Robert J. Harrison, M.D., in February 2014, and reported that pain radiated "with a knifelike sensation in the right knee." (AR 321.) She felt pain under her toes which she attributed to compensation from her low back. (AR 321.) Plaintiff also reported she had occasional numbness and tingling in her right leg. (AR 321.) Upon conducting a physical examination, Dr. Harrison noted tenderness to palpitation in Plaintiff's low back over lumbar spinous processes and paravertebral area and that forward flexion was at 75%. (AR 322.) Dr. Harrison diagnosed Plaintiff with low back pain and noted a treatment plan of continuing to monitor her symptoms of pain, numbness, and swelling in her lower back. (AR 322.) Dr. Harrison advised Plaintiff to take frequent breaks to gently stretch the low back, and that she should use ice or ibuprofen as needed for pain. (AR 322.) Dr. Harrison deemed Plaintiff's condition to be stable and ordered an MRI of her low back. (AR 322–23.)

The MRI of Plaintiff's lumbar spine conducted in May 2014 revealed small herniations at L4-5 and L5-S1 not associated with mass effect, and the provider noted generous volume of the central canal developmentally. (AR 382–83.) The provider also noted that there was no concerning post-contrast enhancement. (AR 382.)

Plaintiff's treatment for her symptoms continued to be conservative, consisting in large part

---

[2] At the hearing, Plaintiff amended her alleged onset date to the application date, April 28, 2020. (*See* AR 32.)
[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

of directions to take over-the-counter medications. (*See* AR 302, 313.) In March 2020, Plaintiff reported that her physical activities and sports included swimming and walking. (AR 314.) In July 2021, she was noted as being physically "active." (AR 365.) A physical examination conducted that month indicated that all areas were within normal limits, with her extremities having no deformities and full range of motion. (AR 365.)

**2.  Opinion Evidence**

a.  Johnny Y. Fong, M.D.

In March 2020, one of Plaintiff's treating providers, Johnny Y. Fong, M.D., completed a "Verification of Incapacity," and opined that Plaintiff had a physical or mental health condition that prevented or substantially reduced her ability to engage in work or training. (AR 384–85.) Dr. Fong noted that the expected duration of Plaintiff's impairments was "permanent." (AR 384.) Dr. Fong opined that Plaintiff had difficulty sitting, standing, and walking for long periods of time due to pain, and that she was unable to carry over 10 pounds or lift anything. (AR 384.)

Dr. Fong noted that Plaintiff's vision is blurry, during cold weather her body "locks up in pain" in her wrists, and she has stabbing pain in her lower back. (AR 385.) Dr. Fong opined that Plaintiff would need to take unscheduled breaks every hour during a working day for about 15 to 30 minutes, and on such breaks, she would need to lie down or sit quietly. (AR 385.)

b.  Roger Wagner, M.D.

On September 9, 2020, Dr. Roger Wagner, M.D., conducted a consultative comprehensive internal medicine evaluation of Plaintiff. (AR 301–05.) Plaintiff reported that her chief complaints were neck pain, thoracolumbar back pain, and right fourth metatarsophalangeal joint callus. (AR 301.) She ascribed the cause of her pain to the slip and fall incident from 1999. (AR 301.) Plaintiff indicated that walking long distances, as well as bending and lifting, could exacerbate her back pain, and she could only sit for about 30 to 40 minutes at a time. (AR 301.) Dr. Wagner noted that Plaintiff is able to climb stairs using railings. (AR 302.)

As for activities of daily living, Plaintiff stated she cooks, cleans, sweeps, mops, can drive, and is able to shop and perform daily activities without assistance. (AR 302.) She indicated she walks for some exercise. (AR 302.) Dr. Wagner noted Plaintiff was easily able to

get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance.  (AR 302.)  He also noted she carried a cane on which she touched down once every fourth or fifth step without leaning on it.  (AR 302.)

Pursuant to a physical examination, Dr. Wagner found that Plaintiff was able to walk on toes and heels, had a negative Romberg test, and normal gait.  (AR 303.)  Dr. Wagner determined that Plaintiff's cane was "not necessary."  (AR 303.)  Dr. Wagner had Plaintiff walk about 20 feet down the hall and noted that she did so without any signs of limp or discomfort.  (AR 304.)  Dr. Wagner found that Plaintiff's neck pain and back pain were most consistent with "occasional" musculoligamentous strain.  (AR 304.)

Dr. Wagner opined that Plaintiff was limited to standing and walking for up to six hours with normal breaks, and she had no limitations as to sitting with normal breaks.  (AR 305.)  Dr. Wagner further opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and that climbing, stooping, and crouching may be performed frequently.  (AR 305.)  Dr. Wagner determined that Plaintiff had no limitations as to manipulative activities or workplace environmental activities.  (AR 305.)

### c. Gettysburg Medical Clinic

In January 2021, Plaintiff's treating provider[4] from the Gettysburg Medical Clinic completed a "Physical Medical Source Statement."  (AR 317–20.)  The provider noted meeting Plaintiff as a new patient in March 2019, and her symptoms included fatigue, pain, and dizziness when she gets up too quickly.  (AR 317.)  When asked to list Plaintiff's treatment, including "any side effects of medication that may have implications for working," the provider listed dizziness and vertigo.  (AR 317.)  The provider opined that Plaintiff's impairments lasted or can be expected to last for at least twelve months, and emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations.  (AR 317.)

The provider determined that Plaintiff could walk one block, but had to rest halfway there, she could only sit for 15 minutes or stand for 10 minutes at a time, and she would be off task for 25% or more of the day.  (AR 317–18.)  The provider also opined that Plaintiff was limited to

---

[4] As the ALJ noted (AR 21), the provider's name on this statement is unintelligible.

sitting, standing, and walking for less than two hours, she must use a cane or assistive device because it is medically necessary, and she could rarely lift and carry less than 10 pounds. (AR 319.) The provider noted that Plaintiff would have significant limitations with reaching, handling, or fingering, and she would be absent from work as a result of her impairments or treatment for more than four days per month. (AR 318.)

In July 2021, a second treating provider from Gettysburg Medical Clinic completed a "Physical Medical Source Statement." (AR 387–90.) This provider's opinion was largely identical to the first provider's opinion. (AR 387–89.) The second provider also opined that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, and Plaintiff did not have significant limitations with reaching, handling, or fingering. (Id.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on October 15, 2020, and again on reconsideration on January 20, 2021. (AR 15, 54, 60–61, 71–73, 78–82, 90–95.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 96.) The ALJ conducted a hearing on July 26, 2021. (AR 27–53.) Plaintiff appeared at the hearing with her attorney representative and testified as to her alleged disabling conditions and work history. (AR 34–46.) A Vocational Expert ("VE") also testified at the hearing. (AR 46–52.)

**1.     Plaintiff's Testimony**

At the hearing on July 26, 2021, Plaintiff testified it was very hard for her to walk and get around like she used to. (AR 37.) She stated she has had a couple of episodes where she fell because she lost balance and it felt like her legs gave out on her. (AR 37.) She described her lower back pain as feeling like she is being hit by a truck "constantly, repeating over and over again." (AR 37.) Plaintiff stated that certain medications helped confine the pain, but not completely, and her pain made it hard for her to sit and use the bathroom at times. (AR 37–38.)

Plaintiff testified that her doctors opined she has three herniated discs in her back, but there was no treatment for it, so it was a matter of pain management. (AR 38.) Plaintiff also stated her doctors determined she is not a candidate for physical therapy, injections, or surgery. (AR 38.) She indicated she takes medication to sleep at night, and that ibuprofen "helped a lot." (AR 38–39.) She

does stretches when she feels sore, and she tries to get up and move as much as possible, such as every 20 or 30 minutes.  (AR 39–40.)  If she sits for long, "everything starts numbing."  (AR 40.)

Plaintiff stated that if she is in a comfortable couch or chair with back support, she can sit for two hours without pain.  (AR 40.)  However, if the seat is hard, like a wooden chair, she cannot sit for longer than 15 minutes.  (AR 40.)  She cannot be on her feet for more than 30 minutes, and there are times when she is unable to stand to brush her teeth or wash the dishes.  (AR 40–41.)

Plaintiff testified that she has been using a cane since April 2020.  (AR 41.)  She described times where she fell and scraped her knees and elbows, or just lost balance, and indicated the cane helped when she needed to go to doctor's appointments.  (AR 41.)  The cane had not been prescribed to her, but a walker had been prescribed.  (AR 41–42.)

Plaintiff stated that on a typical day, she wakes up in pain and felt like somebody "kind of beat [her] up on [her] lower back."  (AR 43.)  It is initially hard for her to stand up when she wakes up because her back is sore.  (AR 43.)  After she feeds her animals and does other household tasks, she lies down on the couch for a bit.  (AR 43–44.)  Plaintiff is unable to stand at the stove to cook, so she usually eats something that can be microwaved.  (AR 44.)  She stated she has not left Fresno for six years because of her back injury and difficulty traveling.  (AR 45.)  To pass the time, she watches television, reads, and watches videos.  (AR 45.)  At times, the pain distracts her from even watching television, to the point where she feels nauseous and she begins to shake and sweat.  (AR 46.)  Typically, Plaintiff tries to close her eyes and sleep to get "the pain to go away."  (AR 46.)

  **2. The VE's Testimony**

At the hearing on July 26, 2021, the VE testified that Plaintiff had past work experience as a front desk clerk.  (AR 48.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history and skills.  (AR 48.)  The VE was to assume this person could work at a medium exertional level with the following additional limitations: frequently climbing ramps, stairs, ladders, ropes, and scaffolds; and frequently stooping, kneeling, crouching, and crawling.  (AR 48.) The VE testified that such a person could perform Plaintiff's past work, as well as other jobs available in the national economy, such as warehouse worker, Dictionary of Operational Titles

(DOT) code 922.687-058, with a medium exertional level and specific vocational preparation (SVP)[5] of 2; lab equipment cleaner, DOT code 381.687-022, with a medium exertional level and SVP of 2; and floor waxer, DOT code 381.687-034, with a light exertional level and SVP of 2. (AR 48–49.)

The VE testified that even with the use of a cane for ambulation, such an individual would (AR 387–89.)be able to perform Plaintiff's past work. (AR 49–51.) The VE further stated that there would be other jobs that could be done with the positional limitation of needing to use a cane, such as photocopy machine operator, DOT code 207.685-014, with a light exertional level and SVP of 2; weight recorder, DOT code 222.387-074, with a light exertional level and SVP of 2; and document specialist, DOT code 249.587-018, with a light sedentary level and SVP of 2. (AR 51.) The VE also testified that employers typically do not tolerate employees being off task for more than 12% of the workday or employees being absent on an unexcused basis for more than two days per month. (AR 51.) The VE stated that if the cane were changed to a walker, Plaintiff's past work, as well as light or sedentary work, could not be performed. (AR 52.)

**C.     The ALJ's Decision**

In a decision dated August 10, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–22.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 17–22.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 28, 2020, the application date (step one). (AR 17.) The ALJ then found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months (step two). (AR 17.) Specifically, the ALJ determined that Plaintiff had the following medically determinable impairments: obesity; asthma; vision loss; gastroesophageal reflux disease; hypertension; and degenerative disc disease with musculoligamentous strain of the back. (AR 17.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's statements "concerning the

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

intensity, persistence and limiting effects of [her] symptoms" as "not entirely consistent with the medical evidence and other evidence in the record." (AR 19.) The ALJ found that Plaintiff's medically determinable impairments caused no more than minimal limitations to her ability to perform work activities. (AR 20–21.) The ALJ concluded Plaintiff did not have a severe impairment or combination of impairments (AR 17, 20) and she was not disabled as defined by the Act (AR 22). *See* 20 C.F.R. § 416.920(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 3, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III.     LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe

8

> impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in not finding her lumbar degenerative disc disease and obesity "severe" at step two. (Doc. 17 at 6–8.) Plaintiff further asserts that the ALJ improperly discounted her testimony regarding these two conditions. (*Id.* at 8–10.)

The Acting Commissioner counters that that the objective medical evidence did not establish the existence of a severe impairment. (Doc. 19 at 7–10.) The Acting Commissioner also contends that the ALJ properly considered Plaintiff's subjective complaints of pain and other limitations. (*Id.* at 10–14.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.    The ALJ Did Not Commit Prejudicial Error at Step Two**

Plaintiff first contends that the ALJ erred at the second step of the sequential evaluation process by failing to find that her lumbar degenerative disc disease and obesity were severe impairments. (Doc. 17 at 6–8.)

///

1. **Legal Standard**

At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 416.920(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id*. An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id*. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be considered when determining the RFC.") (internal citations omitted).

2. **Analysis**

At step two, the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months. (AR 17.) The ALJ determined that Plaintiff had the following medically determinable impairments: obesity; asthma; vision loss; gastroesophageal reflux disease; hypertension; and degenerative disc disease with musculoligamentous strain of the back. (AR 17.) The ALJ found that none of Plaintiff's impairments caused more than minimal limitations as to her ability to perform work activities. (AR 20.) The ALJ acknowledged Plaintiff's subjective allegations but determined that, "in the absence of clinical or imaging results that substantiate[d] the presence of a severe impairment," Plaintiff's claim should be denied at step two. (AR 20.)

11

The ALJ's decision not to deem Plaintiff's lumbar degenerative disc disease and obesity to be severe impairments at step two is supported by substantial evidence in the record. In their step-two discussion, the ALJ found that Plaintiff's "treatment has been extremely conservative, consisting of prescriptions for Tylenol, gabapentin, and ibuprofen/naproxen." (AR 20.) Indeed, the evidence shows Plaintiff's low back pain was effectively controlled with medication. For example, in February 2014, Dr. Harrison advised Plaintiff to take frequent breaks to gently stretch her low back, to use ice or ibuprofen as needed for pain, and determined her condition was stable. (AR 322–23.) Her treatment continued to be conservative over the next few years, consisting in large part of directions to take over-the-counter medications. (*See* AR 302, 313.) At the hearing, Plaintiff herself testified that her doctors indicated she was not a candidate for physical therapy, injections, or surgery, and ibuprofen specifically "helped a lot" with her back pain. (AR 38–39.) Impairments that are effectively controlled with medication or other medical treatment are not severe. *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]") (citations omitted).

The ALJ also identified objective medical evidence that supported their finding that Plaintiff did not have any severe impairments. (*See* AR 19–20.) As for Plaintiff's back pain, an MRI of her lumbar spine conducted in May 2014 revealed small herniations at L4-5 and L5-S1 not associated with mass effect, and the provider noted there was no concerning post-contrast enhancement. (AR 382–83.) In September 2020, consultive examiner Dr. Wagner observed that Plaintiff was easily able to get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance. (AR 302.) He also noted she carried a cane which she touched down on once every fourth or fifth step without needing to lean on it. (AR 302.) Dr. Wagner observed that Plaintiff was able to walk about 20 feet down the hall without any signs of limp or discomfort, and her cane was "not necessary." (AR 302, 304.) Accordingly, Dr. Wagner opined that Plaintiff was limited to standing and walking for up to six hours with normal breaks, and she had no limitations as to sitting with normal breaks. (AR 305.)

The ALJ also determined that there were no significant objective medical findings in the

record to support more than minimal limitations on Plaintiff's ability to perform work activities arising from obesity. (AR 20.) For example, in July 2021, Plaintiff was noted as being physically "active." (AR 365.) A physical examination conducted that month indicated that all areas were within normal limits, with her extremities having no deformities and full range of motion. (AR 365.)

Plaintiff also attempts to rely on her subjective complaints to establish more than minimal work restrictions stemming from lumbar degenerative disc disease and obesity. (Doc. 17 at 8–10.) As discussed more fully below (*see* Section IV.B., *infra*), the ALJ properly discredited Plaintiff's subjective complaints; even if the ALJ had not done so, such complaints alone cannot establish severity. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

The Court therefore concludes that substantial evidence supports the ALJ's omission of lumbar degenerative disc disease and obesity as severe impairments at step two, as Plaintiff has not met her burden of demonstrating from the record that these two conditions significantly limit her ability to perform basic work activities. *See Webb*, 433 F.3d at 686–87 (explaining that impairments are non-severe if they have no more than a minimal effect on a claimant's ability to work); *see also Bowen*, 482 U.S. at 146 n.5 (the plaintiff bears the burden at step two).

**B.     The ALJ Properly Discredited Plaintiff's Testimony**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

13

if they give "specific, clear and convincing reasons" for the rejection.[6] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

**2.     Analysis**

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 19.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 19.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*,

---

[6] The Court rejects the Acting Commissioner's contention that a lesser standard of review applies. (*See* Doc. 19 at 11 n.6.)

572 F.3d at 591.

Plaintiff limits her challenge to the ALJ's treatment of her testimony as it relates to their step two analysis regarding her lumbar degenerative disc disease and obesity. (Doc. 17 at 8.) The ALJ found Plaintiff's statements not credible because they are inconsistent with both the medical evidence and her reported daily activities. (AR 19–20.) The Court takes each finding in turn.

###### a.  Inconsistency with Medical Evidence

Plaintiff testified that daily pain makes it difficult for her to sit, stand, walk, sleep, concentrate, bend, use the bathroom, and travel. (AR 37–46.) The ALJ found Plaintiff's subjective symptom testimony as to her pain to be inconsistent with the record which included no objective medical evidence of a severe impairment. (AR 19.) The ALJ also noted that the only evidence containing imaging was from 2014 and showed "minimal issues." (AR 19.)

Plaintiff contends that the ALJ rejected her reports of activities of daily living without considering her testimony. (Doc. 17 at 9.) Plaintiff's assertion is directly belied by the ALJ's decision. (*See* AR 20 ("I recognize [Plaintiff's] subjective allegations . . . but in the absence of clinical or imaging results that substantiate the presence of a severe impairment, I deny this claim at step 2.").  Moreover, the ALJ determined that Plaintiff's subjective testimony was inconsistent with the medical record in this case. (AR 19.)

An ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment]." *Burch*, 400 F.3d at 680. Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Id*. at 681; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999). Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, as summarized by the ALJ and set forth above, the record shows minimal limitations. For example, in February 2014, Dr. Harrison advised Plaintiff to take frequent breaks to gently

15

stretch her low back, to use ice or ibuprofen as needed for pain, and determined her condition was stable. (AR 322–23.) An MRI of Plaintiff's lumbar spine conducted a few months later revealed small herniations at L4-5 and L5-S1 not associated with mass effect, and the provider noted there was no concerning post-contrast enhancement. (AR 382.) In March 2020, Plaintiff reported that her physical activities and sports included swimming and walking. (AR 314.) In July 2021, she was noted as being physically "active." (AR 365.) A physical examination conducted that month indicated that all areas were within normal limits, with her extremities having no deformities and full range of motion. (AR 365.)

In addition, consultive examiner Dr. Wagner noted that Plaintiff was able to climb stairs using railings and that she walks for exercise. (AR 302.) Dr. Wagner observed that Plaintiff was easily able to get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance. (AR 302.) He noted she carried a cane with her, which she used minimally and did not have to lean on; thus, Dr. Wagner deemed the cane "not necessary." (AR 302–03.) Following a physical examination, Dr. Wagner found that Plaintiff was able to walk on toes and heels, had a negative Romberg test, and normal gait. (AR 303.) Specifically, Dr. Wagner had Plaintiff walk about 20 feet down the hall, and observed that she did so without any signs of limp or discomfort. (AR 304.) Dr. Wagner found that Plaintiff's neck pain and back pain were most consistent with "occasional" musculoligamentous strain. (AR 304.) Thus, Dr. Wagner opined that Plaintiff was limited to standing and walking for up to six hours with normal breaks, and she had no limitations as to sitting with normal breaks. (AR 305.) Dr. Wagner further opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and that climbing, stooping, and crouching may be performed frequently. (AR 305.)

The Court finds the ALJ's conclusion that the evidentiary record undermines Plaintiff's testimony is supported by substantial evidence. It is therefore one of two clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence).

///

b.     Activities of Daily Living

Next, the ALJ determined that Plaintiff's claim of total disability is inconsistent with her reported daily activities. (*See* AR 19–20.) As summarized by the ALJ, Plaintiff indicated to consultive examiner Dr. Wagner that she can cook, clean, sweep, mop, drive, shop, and perform daily activities without assistance, and that she walks for exercise. (AR 302.) She reported that her physical activities and sports included swimming and walking, and she was physically "active." (AR 314, 365.) Plaintiff also testified at the hearing that she does household tasks, such as feeding her animals. (AR 43–44.)

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). In evaluating a claimant's credibility, an ALJ may also consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

The Court finds that Plaintiff's above-described activities tend to suggest that she may still be able to perform, on a sustained basis, the basic demands of her past relevant work as a front desk clerk. *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly

17

made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

As noted by Plaintiff, the record also contains some contrary evidence, such as Plaintiff's testimony that her ability to perform some household chores is hampered by pain (*see* AR 37–46) and opinions by treating providers that she is significantly limited due to her impairments (*see* AR 317–20, 384–85, 387–90). The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that her pain renders her ***completely*** unable to work. *Fair*, 885 F.2d at 604; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence."). Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

In sum, the Court finds the ALJ discounted Plaintiff's subjective symptom allegations related to her lumbar degenerative disc disease and obesity for at least two clear and convincing reasons supported by substantial evidence.

## I.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **October 11, 2023**                     /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE